**\*Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SOPHIE BUBIS, | : | Civil Action No. 06-2921 (FLW) |
| Plaintiff, | : | |
| v. | : | |
| VILLAGE OF LOCH ARBOUR, et al., | : | **OPINION** |
| Defendants. | : | |

**WOLFSON, United States District Judge:**

Presently before the Court are motions filed by Defendants, Township of Ocean ("Ocean"), Michael Sorrentino ("Sorrentino") and Frank Sprague ("Sprague"), Village of Loch Arbour ("Loch Arbour"), William Rosenblatt ("Rosenblatt")(collectively, "Defendants"), to dismiss Plaintiff Sophie Bubis' ("Plaintiff" or "Bubis") two-count Complaint, in which Plaintiff asserts a claim arising under 42 U.S.C. § 1983 and the New Jersey Constitution, and a claim for negligence. Generally, Plaintiff alleges that Defendants deprived her of her civil and property rights under the Federal Constitution and State Constitution by denying her due process of law and just compensation in connection with a beach access dispute. For the reasons set forth herein, Defendants' motions to dismiss are **GRANTED**.

## BACKGROUND

Plaintiff resides across the street from the beachfront property at 10 Ocean Avenue in Loch Arbour, New Jersey, owned by Jack A. Kassin and Joyce Kassin, husband and wife (the "Kassins"). This case stems from a protracted dispute between Plaintiff and the Kassins; this suit is the latest

saga.  By way of a brief background, in 1995, Plaintiff initiated a lawsuit against the Kassins in the Superior Court of New Jersey, Chancery Division, wherein Plaintiff sought to vindicate her rights as a property owner in Loch Arbour to gain access to the beach through the Kassins' property. Following an adverse decision in that court, Plaintiff appealed to the Appellate Division, and the Appellate Court ultimately determined that Plaintiff had an implied private easement that afforded her access to the beach and ocean by passing through the Kassins' property, and that Plaintiff's right to beach access was governed by the public trust doctrine.  The Appellate Court, however, did not determine whether Plaintiff had unfettered access to, rights, or dominion over any portion of the Kassins' beachfront property for her own personal use.  The disputes between Plaintiff and the Kassins have resulted in two additional state court decisions, one of which continues to the present day, with proceedings currently pending before the Appellate Division of the State Superior Court.

On or about October 15, 2002, the Honorable Clarkson S. Fisher, Jr., J.S.C., entered an Amended Judgment permitting the Kassins to establish a pedestrian pathway along the southerly boundary of their property through which Plaintiff could gain access to the beach and the ocean. Construction of the pathway was completed on or before June 1, 2004.  On Sunday, June 27, 2004, Plaintiff allegedly used the newly constructed pathway to enter upon the property.  Plaintiff alleges that she proceeded to situate herself in a beach chair at the location on the foreshore of the property below the mean high water mark of the ocean.  Shortly thereafter, Mr. Kassin called the police department of Ocean (which performs law enforcement services for Loch Arbour) and complained that Plaintiff had no right to sit at the particular location and requested the police to take action and remove her.

Patrolman Sorrentino responded to the call and went to the Kassins' property.  After arriving

2

at the property, Sorrentino spoke with Mr. Kassin and an employee of the Kassins, who advised

Sorrentino that Plaintiff refused to comply with their request to move from her particular location

on the foreshore.  The Complaint also alleges that Mr. Kassin informed Sorrentino that he and

Plaintiff had been involved in "civil litigation."

Sorrentino then spoke to the Mayor of Loch Arbour, Rosenblatt, who allegedly misinformed

Sorrentino that Plaintiff had absolutely no legal right to sit on the foreshore.  Mayor Rosenblatt also

advised Sorrentino that the court had required the Kassins to build a pedestrian walkway on the

southern side of their property to allow access.  After the conversation with Mayor Rosenblatt,

Sorrentino approached Plaintiff on the foreshore and advised Plaintiff that she was on private

property and needed to move.  Plaintiff refused to move from her location and informed Sorrentino

that she was within her rights to be there.

Subsequently, Sgt. Sprague of the Ocean Police Department, at the request of Mr. Kassin,

prepared a complaint-summons (S 2004-000033) charging Plaintiff with the offense of Defiant

Trespass (a petty disorderly offense) in violation of N.J.S.A. 2C: 18-3(b)(1).  The complaint-

summons was signed by Mr. Kassin as a private criminal complainant.  See Complaint-Summons

Dated June 27, 2004.  After the summons and complaint was served upon Plaintiff by both Sprague

and Sorrentino, she gathered her belongings and left the beach.  Plaintiff does not allege that she was

taken into custody, nor does she allege that she was physically touched by either Sorrentino or

Sprague.  In other words, Plaintiff's claims are not based on false arrest or excessive force.

As a result of the incident, Plaintiff filed two separate private complaints against the Kassins,

captioned State of New Jersey v. Jack Kassin, and State of New Jersey v. Joyce Kassin; these

complaints and the Kassins' private complaint against Plaintiff were then transferred to the New

3

Jersey Superior Court, Chancery Division, under the caption <u>Bubis v. Kassin</u>, Docket No. C-296-95. After a trial, the Honorable Alexander D. Lehrer, J.S.C., found that " . . . only a very limited use of the Kassins' property is mandated by the Public Trust Doctrine.  That limited use shall include the right to walk, fish, surf and engage in similar recreational activities and the right to reasonable, short rest periods in the foreshore.  Ancillary to the foreshore rights, the public may also use the Kassin dry sand beach for reasonable, short rest periods while engaging in permitted activities." <u>See</u> Judge Lehrer's Opinion at p. 19.  Morever, Judge Lehrer opined that " . . . public does not have the right to place a beach chair umbrella or other beach paraphernalia, engage in sun bathing activities or rest for other than a reasonable time in the foreshore or the six-foot strip of dry sand." <u>Id.</u> at 19-20. Judge Lehrer's decision is currently on appeal.

In the instant suit, Plaintiff brings § 1983 claims against Defendants for violating her constitutional rights to use the foreshore on the Kassins' property.  Plaintiff also asserts a negligence claim against all Defendants for their failure to exercise reasonable care in utilizing the criminal law of the State of New Jersey for the benefit of the Kassins, and because of such negligence, Plaintiff alleges that she suffered loss of reputation, stress, embarrassment, and humiliation.  Defendants have filed the within motions to dismiss all of Plaintiff's claims.

DISCUSSION

**I.    Standard of Review**

In reviewing a motion to dismiss on the pleadings, a Court must take all allegations in the Complaint as true, viewed in the light most favorable to the plaintiff. <u>See</u> <u>Gomez v. Toledo</u>, 446 U.S. 635, 636 n. 3 (1980); <u>Robb v. Philadelphia</u>, 733 F.2d 274, 277 (3d Cir.1984). If no relief could be granted under any set of facts that could prove consistent with the allegations in the Complaint, the

4

Court may dismiss the Complaint for failure to state a claim. See Hishon v. Spalding, 467 U.S. 69, 73 (1984); Bartholomew v. Fischl, 782 F.2d 1148, 1152 (3d Cir.1986).  Recently, in Bell Atlantic Corporation v. Twombly, the Supreme Court clarified the Rule 12(b)(6) standard. 127 S.Ct. 1955 (2007). Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." Id. at 1968 (citing Conley, 355 U.S. at 45-46). Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965. Thus, while a complaint does not need detailed factual allegations, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1964-65.

## II.   Municipal Liability

A municipality cannot be held liable under 42 U.S.C. § 1983 on a respondeat superior theory of liability.  Monell v. Department of Social Services, 436 U.S. 658, 694 (1978).  Instead, when a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom.  Id.; Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).  Thus, although the municipality may not be held liable for a constitutional tort under § 1983 on the theory of vicarious liability, it can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom. Monell, 436 U.S. at 694.  The Supreme Court's holding and reasoning in Monell have created a two-path track to

5

municipal liability under § 1983, depending on whether the allegation is based on municipal policy or custom.  See Pembaur v. City of Cincinnati, 475 U.S. 469, 481, n.10 (1986).

The Third Circuit has articulated the distinctions between these two sources of liability:

> A government policy or custom can be established in two ways. Policy is made when a "decisionmaker possessing final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)(citations omitted); see also Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (same).

An individual's conduct implements official policy or practice under several types of circumstances, including when (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred. See, generally, Pembaur, 475 U.S. at 478-484 ; Laverdure v. County of Montgomery, 324 F.3d 123, 125-126 (3d Cir. 2003).  Custom may also be established by evidence of knowledge and acquiescence.  See Fletcher v. O'Donnell, 867 F.2d 791, 793 (3d Cir. 1989), cert. denied, 492 U.S. 919 (1989).

A.    Defendant Village of Loch Arbour

Here, Plaintiff's allegations pertaining to Mayor Rosenblatt's action is most relevant to the second type of circumstance listed above - the individual has the final policy-making authority such that his conduct represents official policy.  Based on the Complaint, Plaintiff claims that she has

alleged a sufficient nexus between the municipal policy of Loch Arbour, as enunciated by Mayor Rosenblatt when he allegedly misinformed Sorrentino that Plaintiff did not have the right to sit at the foreshore, and the removal of Plaintiff from that area.  While Plaintiff does not expressly indicate which policy or custom Mayor Rosenblatt executed, it appears from the Complaint that Mayor Rosenblatt, as the chief executive officer of Loch Arbour, allegedly deprived Plaintiff of her right to access by expressly disallowing her from using the foreshore to sit and rest. By doing so, Plaintiff asserts that Mayor Rosenblatt effectively executed the policies, customs and usages of Loch Arbour. Accordingly, only if Mayor Rosenblatt was a final policy-maker would he subject Loch Arbour to liability under § 1983.  While the Complaint does not expressly state so, it appears that Plaintiff has alleged that Mayor Rosenblatt was a final policymaker.

In order to ascertain if an official has final policy-making authority, and can thus bind the municipality by his conduct, a court must determine (1) whether, as a matter of state law, the official is responsible for making policy in the particular area of municipal business in question, <u>McMillian v. Monroe County</u>, 520 U.S. 781, 785 (1997); <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112 (1988), and (2) whether the official's authority to make policy in that area is final and unreviewable. <u>Praprotnik</u>, 485 U.S. at 126 -27; <u>Pembaur</u>, 475 U.S. at 483; <u>Brennan v. Norton</u>, 350 F.3d 399, 428 (3d Cir. 2003)("if a municipal employee's decision is subject to review . . . it is not final and that employee is therefore not a policymaker for purposes of imposing municipal liability under § 1983"). Here, without support, Defendants merely argue that Mayor Rosenblatt does not possess the final authority to make policy without the ratification of others within the local governing body, which consists of a five-member non-partisan Board of Trustees.  However, the "policy or custom" requirement may be satisfied by a single act of a government decisionmaker.  See <u>Fuchilla v.</u>

7

Prockop, 682 F.Supp. 247, 260 (D.N.J. 1987). For the purposes of a motion to dismiss, Defendants have not sufficiently presented adequate support for this Court to find conclusively that Mayor Rosenblatt did not have the final authority to make the decision at issue. Rather, based on the allegations, it appears that Mayor Rosenblatt's decision to preclude Plaintiff from using the foreshore is final in the sense that it was not reviewable by any other person or any other body or agency in Loch Arbour; that is, there was no one above the mayor to curtail his conduct. The Court also finds that there is an issue of fact whether the alleged statement made by the mayor constitutes "official policy." See, e.g., Hill v. Borough of Kutztown, 455 F.3d 225, 246 (3d. Cir. 2006)(the Third Circuit reversed district court's decision to dismiss a § 1983 claim against defendant municipality because the Court held that the plaintiff has sufficiently alleged that the municipality is bound by its mayor's conduct because the mayor's decision may be final).

Nevertheless, Plaintiff has failed to allege a cause of action against Loch Arbour under § 1983. In order for Loch Arbour to be held responsible, Plaintiff must plead a constitutional violation actionable under § 1983. See Hill, 455 F.3d at 245 ("There cannot be an award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm")(internal quotations and citations omitted). Plaintiff argues that her rights are governed by the "public trust doctrine," which was a right previously determined by New Jersey state court. Generally, the public trust doctrine protects the public's right to freely use and enjoy state-owned property -- the beach. Cooper v. United States, 779 F. Supp. 833, 835 (E.D.N.C. 1991). The New Jersey Supreme Court has extended the doctrine to preserve public access across privately-owned dry sand beach in order to reach the foreshore. Matthews v. Bay Head Improv. Ass'n, 95 N.J. 306, 324 (1984)("The public interest is satisfied so long as there is reasonable access

8

to the sea").[1]

In support of her contention that sitting at, and using, the foreshore is a constitutional right, Plaintiff first cites to a slew of historical cases which have held that the right and privilege claimed by the states as to the title and dominion of tide waters and of the lands thereunder arise under the United States Constitution.  Then, without any authority, Plaintiff draws the conclusion that because the right of New Jersey to oversee its tidal lands and water arises under the Constitution, the rights of the public to use the tidal lands and water for recreational uses, including bathing, swimming and other shore activities, should therefore be an inherent constitutional right guaranteed by the privileges and immunities under the U.S. Constitution.  The Court finds Plaintiff's logic faulty.

As a preliminary matter, Plaintiff does not cite to any federal authority that has conclusively held, or even mentioned, that Plaintiff has a constitutional right under the Fifth or Fourteenth Amendment to use the foreshore of a private property.  Rather, Plaintiff relies on New Jersey case law to demonstrate the extent of her alleged right pursuant to the public trust doctrine.  In the case Plaintiff relies on, Matthews v. Bayhead Improvement Ass'n, the Supreme Court of New Jersey

---

[1]The public trust doctrine is derived from the ancient principle of English law that land covered by tidal waters belonged to the sovereign, but for the common use of all the people. Borough of Neptune City v. Borough of Avon-by-the-Sea, 61 N.J. 296, 303-04 (1972).  "The original purpose of the doctrine was to preserve for the use of all the public natural water resources for navigation and commerce, waterways being the principal transportation arteries of early days, and for fishing, an important source of food."  Id. at 304.  It is a title held in trust for the people of the State, that they may enjoy the navigation of the waters, carry on commerce over them, and have liberty of fishing therein, freed from the obstruction or interference of private parties.  Id. (quotations and citations omitted).  The New Jersey Supreme Court has held that, as a matter of common law, the public rights in tidal lands are not limited to the ancient prerogatives of navigation and fishing, but extend as well to recreational uses, including bathing, swimming and other shore activities.  Id. at 305.  The public trust doctrine should "be molded and extended to meet changing conditions and needs of the public it was created to benefit."  Id. (citations omitted).

explained in detail that "'[t]he constant enjoyment of this privilege [bathe in salt waters] of thus using the ocean and its fore-shore for ages without dispute should prove sufficient to establish it as an American common law right . . .'" Id. at 321 (quoting White v. Hughes, 139 Fla. 54, 59 (1939) (emphasis added). The State Supreme Court went on to say: this right is "reflected in a statewide policy of encouraging, consonant with environmental demands, greater access to ocean beaches for recreational purposes. Expressions of this policy can be found in . . . the decisions of this Court concerning the public trust doctrine . . . ." Id. at 323. Indeed, "[t]he Public Trust Doctrine has always been recognized in New Jersey . . . [as] deeply ingrained in our common law, due, no doubt, to New Jersey's unique location on the Atlantic Ocean . . . ." See Van Ness v. Borough of Deal, 78 N.J. 172, 178 (1978) (emphasis added); see Lusardi v. Curtis Point Prop. Owners Ass'n, 86 N.J. 217, 228 (1981)(The public trust doctrine is premised on the common rights of all citizens to use and enjoy tidal land seaward of the mean high water mark); see also Neptune City, 61 N.J. at 309 (the public trust doctrine, "like all common law principles, should not be considered fixed or static . . ."). Significantly, the state court decision that originally established Plaintiff's right of access through the Kassins' property also reasoned that her right flows from the public trust doctrine. Bubis v. Kassin, 323 N.J. Super. 601, 614 (App. Div. 1999); see also Cooper, 779 F. Supp. at 845.

Clearly, pursuant to case law, the alleged privilege of Plaintiff, if it exists, to use the foreshore as a place for a prolonged period of rest flows from the public trust doctrine, which is governed by common law and not by the Constitution. Moreover, it does not appear that Plaintiff has pled any other constitutional violations.[2]  Therefore, Plaintiff has pled her right to access as a

---

[2]Plaintiff's Complaint does not clearly and expressly plead which constitutional right Defendants violated. It does not appear that the police's questioning of Plaintiff is the basis for her cause of action; nor does it appear that Defendants violated Plaintiff's constitutional right by

matter of New Jersey common law, not a right stemming from the protections of the United States

Constitution or the New Jersey State Constitution.[3]  Accordingly, no claim can be made against Loch

Arbour under § 1983.

        B.      <u>Defendant Township of Ocean</u>

      With respect to allegations of liability against Ocean, Plaintiff argues that pursuant to the

Police Services Agreement between Loch Arbour and Ocean, Ocean agreed to render police services

"for and on behalf of Loch Arbour equivalent to the services rendered in Ocean."  <u>See</u> Police

Services Agreement dated December 17, 1998.  In addition, Ocean agreed to indemnify and hold

Loch Arbour harmless from any act or omission on the part of Ocean and its employees that resulted

in personal injury or property damage sustained by residents of Loch Arbour.  <u>Id.</u> at ¶ 3.4.  Based on

that language, Plaintiff claims that the relationship between Loch Arbour and Ocean was that of

principal and agent.  Thus, any acts or omissions by Ocean Township police resulting in injury to

Plaintiff would permit her to maintain an action against Ocean.  However, this argument lacks merit

in light of the Court's finding that Plaintiff has failed to state a claim against Loch Arbour under §

1983.  Moreover, Ocean does not independently make policy for Loch Arbour, and certainly, it

cannot be argued that Loch Arbour's mayor makes policy for Ocean.  To accept Plaintiff's argument,

the Court would have to impose vicarious liability on a municipality based upon a principal-agent

theory, which is well beyond the confines of <u>Monell</u>.  Accordingly, Plaintiff also has failed to state

---

allowing Mr. Kassin to file a private criminal complaint.  <u>See</u> N.J. Court Rule 7:2-1(a)(New
Jersey law requires that each municipal court shall accept for filing every complaint by any
person).  Also, Plaintiff does not allege that she was touched by the police or falsely arrested.

    [3]Importantly, Plaintiff did not, in any of her submissions, specify which right in the New
Jersey Constitution she claims Defendant violated.

a claim against defendant Ocean.

### III.    Qualified Immunity

Defendants officers Sorrentino and Sprague and Mayor Rosenblatt assert that they are entitled to qualified immunity on Plaintiff's section 1983 claims. The Third Circuit has recently explained the legal framework for evaluating claims of qualified immunity:

> When an officer's actions give rise to a § 1983 claim, the privilege of qualified immunity, in certain circumstances, can serve as shield from suit. The primary purpose of affording public officials qualified immunity, thus insulating them from suit, is to protect them "from undue inference with their duties and from potentially disabling threats of liability." The privilege of qualified immunity, however, can be overcome when state officials violate "clearly established statutory or constitutional rights of which a reasonable person would have known."

Wright v. City of Phildelphia, 409 F.3d 595, 599-600 (3d Cir. 2005) (citations omitted).

The Supreme Court has set forth the analytical framework for determining when the privilege of qualified immunity has been overcome:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry . . . If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

Saucier v. Katz, 533 U.S. 194, 201 (2001).

The second step requires further elaboration.  "To be clearly established for purposes of the qualified immunity analysis, the contours of the right must be sufficiently clear such that a reasonable official would understand that what he is doing violates that right." Hughes v. Shestakov, Docket No. 00-6054, 2002 WL 1742666, *4 (E.D. Pa. Jul. 22, 2002) (citing Karnes v. Skrutski, 62

F.3d 485, 492 (3d Cir. 1995)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202 (citation omitted). The analysis of whether a right was "clearly established" "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007) (quoting Saucier, 533 U.S. at 201).

Thus, qualified immunity gives officers or officials room to make reasonable mistakes about the legality of their actions: "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." Saucier, 533 U.S. at 205. In other words, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." Id. at 202 (citation omitted). However, when reviewing whether immunity attaches on a motion to dismiss, the facts are construed in the light most favorable to Plaintiff.

In the present case, the inquiry of qualified immunity is relatively straightforward. Having already determined that Plaintiff failed to plead a constitutional right stemming from the U.S. Constitution or a statutory right, Plaintiff has failed to meet the threshold question in the first step of the qualified immunity inquiry. As such, Plaintiff has failed to allege a cause of action against defendants Sorrentino, Sprague and Mayor Rosenblatt.

Nevertheless, even assuming Plaintiff's right to sit at the foreshore stems from the Constitution, Plaintiff has otherwise failed to allege that defendant officers and Mayor Rosenblatt violated her clearly established statutory or constitutional right. Instead of presenting an argument, Plaintiff simply states that "for the purpose of determining whether plaintiff has stated a cause of action against the parties, it is not necessary to establish at this juncture whether Mrs. Bubbis' right to sit on the foreshore was so clearly established as to defeat the defendants officers' claim of qualified immunity." See Plaintiff's Opposition to Defendants' Motion to Dismiss at p. 4. The Court disagrees. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). It behooves the Court and the parties to resolve immunity questions at the earliest possible stage of litigation. Saucier, 533 U.S. at 201.[4] Thus, the inquiry is ripe.

The second inquiry is whether Plaintiff's alleged right is clearly established such that a reasonable official or officer would understand that what he is doing violates that right. Defendants Sorrentino, Sprague and Mayor Rosenblatt each assert that they acted reasonably under the circumstances and that Plaintiff's alleged right was not clearly established at the time of the incident. The Court will now turn to each of the defendants to determine whether qualified immunity attaches.

_____

[4]In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Mitchell, 472 U.S. at 526. The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id. As a result, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam).

A.      Mayor Rosenblatt

Public officials who perform discretionary duties within the scope of their employment are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The Complaint alleges that Mayor Rosenblatt misinformed the officers by stating that Plaintiff did not have the legal right to use the foreshore to rest or sunbathe.  The Court does not independently evaluate whether the action of Mayor Rosenblatt was reasonable under the circumstances, since this Court has the benefit of Judge Lehrer's decision, whereby he decided that Plaintiff did not have the right to use the foreshore area to rest; consequently confirming Mayor Rosenblatt's belief.[5]  This judicial determination is particularly relevant in the qualified immunity context because it establishes that either Plaintiff did not have the right to use the foreshore in the manner that she did at the time of the incident, or at the very least, that reasonable minds could differ on this issue.  Thus, even if the decision is subsequently overturned on appeal, the litigating of this issue and a judge's ruling demonstrate that the right Plaintiff alleges was not clearly established at the time of the incident.  As such, taking the allegations and inferences drawn therefrom in the light most favorable to Plaintiff, the Complaint fails to allege a clearly

---

[5]Plaintiff argues that Judge Lehrer's decision focused not on whether Plaintiff's rights as a litigant was violated, but instead upon the purported need of Plaintiff and the public to an unlimited use of the foreshore and the dry sand areas of the Kassins' property.  Moreover, Plaintiff argues that Judge Lehrer's ruling should be considered prospective from May 31, 2007, and therefore, the holding has no probative value in this matter.  Plaintiff's argument is unavailing since Judge Lehrer expressly stated that preventing the public, including Plaintiff, "from sitting with chairs, towels and umbrellas in the foreshore and dry sand area abutting the Kassin's property is clearly reasonable under the circumstances."  Judge Lehrer's Decision at pp. 18-19.  Nevertheless, whether the decision is prospective or retrospective, the probative value of Judge Lehrer's decision is clear: Plaintiff has not alleged a clearly established right at the time of the incident.

established constitutional right upon which Plaintiff's § 1983 claim is based.

                    B.        <u>Defendants Sorrentino and Sprague</u>

Similarly, immunity attaches to both officers Sorrentino and Sprague.  Having determined that the alleged right Plaintiff claims to have been violated was not clearly established, this basis alone qualifies the officers for immunity.  Moreover, most importantly, Sorrentino and Sprague argue, and the Court agrees, that Mr. Kassin's private complaint was the basis for the officers to serve Plaintiff with the summons and complaint pursuant to New Jersey Court Rules 7:2-1(a). Lacking allegations of excessive force or false arrest, defendant officers' conduct cannot be viewed as having violated Plaintiff's alleged rights.  Rather, both Sorrentino and Sprague spoke to Mayor Rosenblatt in order to determine whether Plaintiff had a right to sunbathe at the foreshore.  Thus, pursuant to Mayor Rosenblatt's views and Mr. Kassin's private complaint, they served Plaintiff with the summons and complaint, after which "she gathered her chair and belongings and left the beach."[6] Compl. at ¶ 22.  Plaintiff has failed to allege a sufficient nexus between the officers' conduct and the violation of her alleged right.  Furthermore, Plaintiff failed to allege a clearly established right against the defendant officers which would entitle her to relief under § 1983.[7]

---

      [6]For the first time, in her Opposition Brief, Plaintiff asserts that the Complaint references that the officers arrested her.  However, based on her own Complaint ¶ 22, upon the demands of the officers, Plaintiff merely "gathered her chair and belongings and left the beach."  Compl. at ¶ 22.  As such, Plaintiff erroneously made allegations in her brief that are plainly inconsistent with the Complaint; there is simply no allegation in the Complaint that either of the officers arrested her.

      [7]In Plaintiff's Supplemental Memorandum of Law in Opposition to Defendants' Motions to Dismiss, Plaintiff argues that even if her right to use the foreshore is not clearly established as a matter of common knowledge to the officers, she should not be put to the burden of proving liability on the part of the municipalities whose executed policies caused a deprivation of constitutional rights.  Since the Court has already dismissed both defendant municipalities on other grounds, Plaintiff's argument regarding the application of qualified immunity to the

IV.    **Negligence**

Plaintiff does not cite to any New Jersey statute which entitles her to relief for the claim of negligence.  However, Plaintiff alleges that she suffered loss of reputation, stress, embarrassment, and humiliation; she seeks damages stemming from pain and suffering.  Thus, it appears that Plaintiff is seeking redress under the New Jersey Tort Claims Act.  In order to prevail on any of Plaintiff's state law tort claims of negligence, she must satisfy a minimum threshold of physical injury.  If the threshold is not met, no damages for pain and suffering can be awarded against a public entity or public employee.  N.J.S.A. 59:9-2(d) provides:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in ceases of permanent loss of bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.  For purposes of this section medical treatment expenses are defined as the reasonable value of services rendered for necessary surgical, medical and dental treatment of the claimant for such injury, sickness or disease, including prosthetic devices and ambulance, hospital or professional nursing services.

N.J.S.A. 59:9-2(d).  In order to prevail in any cause of action for pain and suffering against a public entity or employee, Plaintiff must allege permanent injury, permanent loss of bodily function, or permanent disfigurement.  Brooks v. Odium, 150 N.J. 395 (1997).  Temporary injuries, no matter how painful and debilitating, are not recoverable. Further, a plaintiff may not recover under the Tort Claims Act for mere "subjective feelings of discomfort." Ayers v. Township of Jackson, 106 N.J. 557, 571 (1987).

Here, there is no allegation of any bodily injury to Plaintiff.  In fact, Plaintiff alleges that she left the beach after the summons was served on her, without having been touched by defendant

---

municipalities is moot.

officers.   Furthermore,  and  significantly,  Plaintiff  has  not  responded  or  otherwise  opposed

Defendants' argument on this point.  Since there is no qualifying injury, Plaintiff has failed to state

a negligence claim against Defendants pursuant to <u>N.J.S.A.</u> 59:9-2(d).


Dated: April 22, 2008


                                        /s/  Freda L. Wolfson
                                        The Honorable Freda L. Wolfson,
                                        United States District Judge